173 So.2d 158 (1965)
Joseph GROSS, Appellant,
v.
Phyllis HATMAKER, Appellee.
No. 4964.
District Court of Appeal of Florida. Second District.
March 24, 1965.
*159 John W. Boult, of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellant.
William C. Kaleel, Jr., of Kaleel, Kaleel & Kaleel, St. Petersburg, for appellee.
ANDREWS, Judge.
This is an appeal by the defendant, Joseph Gross, from a judgment entered in favor of the plaintiff, Phyllis Hatmaker.
The plaintiff brought suit for injuries sustained when she slipped and fell behind Wolfie's Restaurant in the Central Plaza Shopping Center, St. Petersburg. The defendant, Joseph Gross, is the owner of a shopping center and had leased premises therein to the co-defendant, Wolfie's.
There are parking facilities in both the front and rear of the stores which make up the Central Plaza Shopping Center. Wolfie's is located on the corner or end position. Situated in line with and adjacent to Wolfie's is a grocery store, a sewing machine store and various other shops. Some of these establishments have entrances in the rear of the store for customers who park in the rear parking lot. Wolfie's has a rear door but this is used for receiving freight and is not a customer entrance. There is no sidewalk behind the stores, and it is customary for patrons to walk behind these buildings on the building-side of a "curbline," which is some thirty to thirty-five feet from said buildings.
The plaintiff testified that she parked her car in the rear parking lot and proceeded to go on a "shopping tour." When she walked in back of Wolfie's, just inside of the curbline about twenty-five feet from the building, her feet slipped and she fell to the ground seriously injuring her knee. She testified that she slipped on some grease which was not "visible to the naked eye" inasmuch as it was "dark, sort of the color of tar" which "blended in" with the pavement.
A witness testified that she also slipped shortly before the plaintiff did on a similar substance to that described by the plaintiff in the same general area. Said witness saw the plaintiff lifting herself from the ground, but did not actually see the plaintiff fall, and testified that she notified Wolfie's of her accident and that its employees investigated the scene, but she could not identify the persons as representatives or employees of Wolfie's.
The "greasy substance" on which the plaintiff slipped may have been some of the waste materials from the defendant restaurant. However, exactly what the substance was or where it came from was not shown. The manager of Wolfie's Restaurant testified that its garbage is of a "greasy nature," and that on several occasions he had received complaints from adjoining store owners of the greasy or messy condition because when the defendant's employees washed down the area with hoses, the material would drain downhill behind their stores and their customers would track grease into their establishments. He further testified that Wolfie's placed their garbage cans in a "closed-off section" behind the restaurant until the day the garbage was picked up by the city collectors. About an hour before the collectors pick up the garbage, the cans are placed at the "curbline," in the area where customers ordinarily walk when coming from the parking lot and where the plaintiff fell. On the day of the accident the cans were not out by the "curbline." He emphatically denied that the greasy condition was caused by Wolfie's employees when they put the cans out for collection, and that his garbage cans leaked. When asked by the plaintiff's attorney how he accounted for the greasy condition, he replied that the city garbage crew would leave some refuse on the street, and sometimes the garbage truck leaked at the corners of the body. Other than this there was no evidence as to how or where the grease came from.
The trial judge refused the defendant's motion for a directed verdict at the close *160 of the plaintiff's case, and instructed the jury to the effect that as to the defendant Wolfie's, the plaintiff was a "licensee," and as to the defendant Gross, she was an "invitee." The trial court instructed the jury that as such the defendant Gross owed the plaintiff a duty to keep the premises in a reasonably safe condition. The jury returned a verdict for the defendant Wolfie's and against the defendant Gross. The defendant Gross appealed.
There is no evidence in the record showing whether the plaintiff slipped on the property leased to Wolfie's, or on property that was retained by the owner as a common parking lot for the customers of all the stores in the shopping center, nor was there any evidence that Gross had actual or implied knowledge that the dangerous condition existed. If the accident occurred on the property leased to Wolfie's, Gross would not be liable because he did not maintain or exercise control over the premises. Under such circumstances a landlord or lessor is not liable for injuries sustained on the premises "when a dangerous condition arises due solely to the use to which the leased premises are put by a lessee." City of Daytona Beach v. Baker, Fla.App. 1957, 98 So.2d 804; Simms v. Kennedy, 1917, 74 Fla. 411, 76 So. 739, L.R.A. 1918C, 297. The defendant Gross did not owe the plaintiff a duty to keep the leased premises in a reasonably safe condition. If, however, the accident took place on the property not leased to Wolfie's, that is, the property under the control of Gross, then the plaintiff failed to prove a cause of action against Gross because there was no evidence that Gross either (1) created the condition, or (2) had actual knowledge of the condition and negligently failed to remedy it, or (3) that the condition had existed for a sufficient period of time to place Gross on constructive notice of its existence. Grand Union Supermarkets, Inc. v. Griffin, Fla. App. 1963, 156 So.2d 788; Food Fair Stores of Florida, Inc. v. Patty, Fla. 1959, 109 So.2d 5.
The plaintiff endeavors to sustain the judgment rendered for her by making reference in her brief to testimony disclosed in a deposition given by T.J. Wright. The deposition was not introduced into evidence at the trial; hence it cannot be used as a part of the appeal record. Since this is so, we cannot consider such testimony nor make any comment whatever as to its import.
Accordingly, the cause is reversed with directions that the court grant the motion of the defendant Gross for a new trial.
Reversed, with directions.
SMITH, C.J., and KANNER, (Ret.), J., concur.